Harper, J.,
delivered the opinion of the Court.
The very full and satisfactory decree of Chancellor De Saussure in this case, leaves very little to be added. Some of the points that were chiefly argued, do not appear to be really involved *454 *n ^ese respect, the power of the legislature, under the con* stitution, to take the property of an individual for public purposes, without compensation,, or if the'legislature possess such power, *ts au^lor‘ty to delegate it to the City Council ; and the authority of the legislature to appoint any other tribunal than a jury of the country to determine on the compensation. The legislature may certainly propose to any citizen, whose property it takes for public purposes, to join in the appointment of commissioners, or arbitrators, to assess his compensation : and if he accepts such terms, and joins in the appointment, unquestionably he will be as much bound, as if he had submitted to arbitration a matter of litigation with an individual. The act of the legislature of 1817, under which the case arises, provides for this mutual submission, if the party shall be willing to make it. It is only in the event of his refusal, that it makes provision for taking the property without any agency on his part. But the present complainant did accept the proposal of the legislature, and appoint commissioners on his part; and he must therefore be bound by their determination, unless there was some irregularity in their proceedings, which will invalidate it. We do not perceive that the powers of the commissioners in this case differed at all from that of arbitrators in contests between individuals, and we think their proceedings are to be governed by the same rules.
Thus regarding them, we think with the Chancellor, that there was an irregularity which vitiated the award. This was the cir. cumstance, that when it was proposed to appoint an umpire on the terms of the act, the complainant made it a condition of his assent to the appointment, that all the commissioners on his part should be present before the umpire, which was agreed to by the commissioners on behalf of the City Council; but the umpire after, wards went on to hear, and determine the matter, in the presence of only one of the complainant’s commissioners. We agree with the Chancellor, that the commissioner who attended, could not take upon himself to represent those who were absent. The umpire, of course, knew the .terms upon which he was appointed ; and in a legal point of view, it was misconduct on his part to disregard those terms, and proceed without the presence of the other commissioners. This is said, of course, without intending any personal reflection on the individual in question, who appears to‘have b'een a fair and highly respectable man; but we think he misconceived his duty.
In Earl v. Stocker, 2 Vera. 251, it is said, that«in Pitt v. Daw *455 kra, the arbitrators promised to hear witnesses, but making the award before they had done so, the award was set aside. In the case of Smith and Coryton, the arbitrator promised not to make his award until Smith, who was not well, should come abroad, Lord Nottingham, for that reason, inclined to set it aside : but the matter ended by compromise.”
In Walker v. Frobisher, 6 Ves. 70, the arbitrator, after examining witnesses, advised the parties to produce no more witnesses. He stated on oath, that after he bad fully made up his mind, several persons, unattended by the solicitors on either side, mentioned to him circumstances relative to the matter in dispute, of which he took minutes, but told them that he had before satisfied himself; and he stated that nothing that passed had the least weight with him. Lord Eldon said, that although he was a most respectable man, on general principles the award could not stand. A judge must not take upon himself to say what effect testimony improperly admitted had produced on his mind.
When a course of proceedings is prescribed to an arbitrator by the consent of the parties, or he engages to pursue a particular course, which the parties think material to their interest, and which may be material, he is not afterwards at liberty to depart from it. The umpire, in this case, was appointed on condition of hearing, and determining, in the presence of all the complainant’s commissioners : and this was the prescribed rule of bis conduct, to which he was bound to conform. In Spettigue v. Carpenter, 3 P. Wms. 361, the bill was to set aside an award. There were several stated accounts between the parties, but the arbitrator, without regarding them, went on to make out an account in his own way. A few days before the time appointed for making the award, one of the parties sent to the arbitrator desiring to be heard ; but he went on to make his award. The award was set aside, “ for as much as there seemed just reason for the plaintiff to desire to be heard, and it was difficult to assign a reason for rejecting so many stated accounts.” Here the arbitrator’s refusal to conform to the reasonable wishes of one of the parties in the course of his investigation, seems to have been the principal ground for impeaching the award.
In Chicot v. Lequesne, 2 Ves. 315, it is a principal ingredient of the decision, that two of the arbitrators decided without the presence.of the third. Reference is made in the argument to the case of Corbett Kynaston v. Mayor of Shrewsbury, “ where fifteen aldermen concurring, as found in the verdict, the whole Court held it a void act, the sixteenth not having been summoned, whose *456 reason might have convinced the rest.” This was the case of a' 6 , corporate act, done, not on a corporation day, when it is said al?1 must be present. So here, »e cannot say that the reason of the other commissioners might not have convinced the umpire. We cannot say that Col. Magwood presented to the mind of the umpire all the circumstances that were necessary to his decision. Different minds see things in a different light, and present them differently. The concurrence of several gives some authority to an opinion, and it is more difficult to resist their arguments. The decision of the umpire seems to have been so palpably erroneous, that perhaps, it is fair to presume he might have been convinced by the reason of several. An umpire, I suppose, may either re-ex amine the whole matter, and hear testimony for himself, or act o» the concurrent statements and opinion of the arbitrators. In the' latter case, it would seem a rule of propriety at least, that all the' arbitrators on both sides should be before him.
vide Lawrence v. Beaubien, 2 Rep. 623.
It was argued, that the complainant had no right to impose conditions \ that he "bad no power to do any thing but name his com-' missioners, and that to them belonged, in conjunction with the commissioners on the part of the Council, the appointment of the umpire. Admitting this to be so, yet as his conditions were as* sented to by the commissioners, who had the power of appointment, it became the rule for the umpire’s conduct, to which he was bound to conform. Besides, we would presume that his commissioners, who were in some sort his agents, joined in the stipulation. It was, we think, a reasonable condition, and may have been a material one. Being assented to on both sides, it was binding on the' umpire.
On the question of jurisdiction, I think it hardly necessary to say, that the setting aside of awards, for misconduct, or irregularity, is a familiar subject of equity jurisdiction.
It was further urged, that the complainant had precluded himself from relief, and confirmed the award, by executing a conveyance' of the premises. It is plain that he did this under a misapprehension of his legal rights; and we have decided, during the present session, that such misapprehension may be relieved against. It was not an acting in ignorance of the law ; but he was assured d o by the Intendant, himself a lawyer, that the execution of the deed would not impair his claim to further compensation. We may justly conclude, that he was deceived, and misled by this assurance. But in truth, this is a mistaken view of the subject. He does not come to be relieved against the deed, or to set it aside. *457 He comes to claim a compensation for his property, to which he is certainly intitled. . The award does not stand in his way, for we have declared it irregular. If before he had received any compensation, he had executed a conveyance, and delivered possession, in the confidence that the Council would go on to ascertain, and pay his compensation, in pursuance of the directions of the act, 1 think he might sustain his suit in equity.
The authority of Chancellor Kent, in Phillips v. Thompson, 1 Johns. C. R. 147, seems directly in point. In that case, commissioners were appointed, under-an act of the legislature, for the purpose of reclaiming drowned lands, and a mode was fixed of making compensation to persons whose property might be injured. Under some understanding with the commissioners, the plaintiff had lowered his mill dam, and they had cut a canal on his land. The bill was for compensation. The Chancellor says he has no doubt of the jurisdiction. It is certain that the plaintiff has sustained injury, and is infilled to compensation. The defendants admit that they entered upon the land, and dug the canal, under his express, or implied assent, and with a mutual understanding that compensation should be made. How is he to proceed! He cannot sustain trespass at law, for the lowering of the mill dam was his own act, and the commissioners entered to cut the canal by his assent. The Chancellor cites many cases, in which the Court has sent issues to law, for the purpose of assessing damages ; and says he is apprehensive the plaintiff will be remediless without the aid of the Court. In the present case the complainant cannot sustain trespass at law. He first delivered possession of the premises by his own act, and afterwards executed a conveyance. It is difficult to conceive of any action, in form ex contractu, which he could sustain at law. Yet he is certainly intitled to full compensation for his property. He has not received it, and the award is not in his way ; and we are apprehensive, that the complainant will be remediless without the aid of this Court.
The decree is therefore affirmed, and the appeal dismissed.
Johnson, J., and O’Neam,, J.', concurred.

Decree affirmed.